CUEVAS *et al. v.* CUEVAS *et al* (two cases).*

(Division B. Jan. 17, 1927.)

[110 So. 865. No. 26130.]

1. LOGS AND LOGGING. *Deed conveying timber held to mean ten year limitation did not begin to run until grantee began to "cut and lumber" standing timber.*

Deed conveying timber on certain tracts of land, with provision that it should remain in force for ten years after grantees commenced to cut and lumber, *held* to mean that ten-year limit should not begin to run until grantee began to cut and lumber standing timber with right to remove down timber without beginning ten-year limit, since the phrase "cut and lumber" must be construed in light of custom as referring to standing timber, and not down timber.

2. TAXATION. *Purchaser acquired no title, where board in attempting to fix date of tax sale in July, 1922, ordered sale for July, 1921 (Laws .1922, chapter 137).*

Where tax sale not having been made on first Monday in May in accordance with Laws 1922, chapter 137, board of supervisors in attempting to pass order fixing date for sale in July, 1922, ordered sale to be made in 1921, and subsequently undertook to

pass another order fixing proper date, purchaser at such sale acquired no title, since board of supervisors had no authority at subsequent term to correct previous order, and order fixing impossible day was equivalent to order fixing no day at all.

3. STATUTES. *Laws authorizing tax sale must be strictly construed as to time and place of sale.*

Tax sales are proceedings *in invitum*, and statutes authorizing such sales must be strictly construed as to time and place of sale.

4. TAXATION. *Minors' remedy to redeem from tax sale is in equity.*

Remedy of minors who are entitled to redeem from tax sale, on account of their disability, is in equity.

5. INFANTS. *Minors with right of redemption from tax sale may have interests sold if necessary to raise funds for redemption (Hemingway's Code, section 2833).*

Where minors owning an interest in land have right to redeem from tax sale, and one of cotenants owns standing timber thereon, minors have right to have their interest sold if necessary to raise funds to redeem land from tax sale, since under Code 1906, section 3521 (Hemingway's Code, section 2833), interest of parties owning land and timber was not such as authorized partition.

*Corpus Juris-Cyc. References: Infants, 31CJ, p. 1041, n. 50 New; Logs and Logging, 38CJ, p. 162, n. 2; p. 163, n. 13; Statutes, 36Cyc, p. 1189, n. 75; Taxation, 37Cyc, p. 1281, n. 27; p. 1336, n. 77, 81; p. 1419, n. 60; p. 1479, n. 88. On right of minor to redeem lands from tax sale during minority see 26 R. C. L. 430.

APPEAL from chancery court of Harrison county.

HON. V. A. GRIFFITH, Chancellor.

Separate suits by C. E. Cuevas and others, and by Ethel Cuevas and others, against Roman Cuevas and others, which were consolidated and tried together. Decree dismissing both bills, and complainants appeal. Affirmed in part, and in part reversed and remanded.

*T. M. Evans* and *M. D. Brown,* for appellants.

I. Section 7012, Hemingway's Code (section 4375, Code of 1906) fails to set out the method of procedure

by which infants or persons of unsound mind may es-
tablish his or her interest in the land which he or she
seeks to redeem, or to designate the court or officer be-
fore whom the interest of the minor or insane person
shall be established and before whom the redemption
shall be made; but the inference is that the land would be
redeemed directly from the purchaser at the tax sale
after the land had been purchased by an individual, since
it expressly provides that the minor or the insane per-
son shall pay to the person entitled the value of all per-
manent improvements on said land made by any claimant
of it under the tax sale.   Under these circumstances we
must look to some other provision of law to ascertain
how this redemption can be made and how the interest
of the minor or insane person can be established. See
section 310, Hemingway's Code (section 2790, Code of
1906), providing how title to property acquired by de-
scent may be made.   See also section 311, Hemingway's
Code (section 2791, Code of 1906).

In this case the heirs are fully set out and the assignees
of the heirs have been made defendants. We insist that
the heirs of Roman Cuevas, deceased, could redeem
only such interest in the land as they established by some
judicial proceeding.   Since the chancery clerk has no
authority to cancel the deed of a purchaser after the
period of two years for redemption has expired and a
title has become complete in the purchaser, the tax deed
remains in the hands of the chancery clerk until the end
of two years from the date of the sale; then the chancery
clerk delivers the deed to the purchaser which is then
placed of record and the land becomes the land of the
purchaser as shown by the record of deeds of the coun-
ty.   And the deed which had been recorded cannot be
changed or altered except by a court of competent juris-
diction to inquire into the rights and equities of all of
the parties interested in said land.

II.   As to the second question:   Can a minor have a sale for partition of land in order to raise money in which to redeem his or her interest from a tax sale? We think this question has been thoroughly settled in this state in *Johns* v. *Smith,* 56 Miss. 727, 732; *Bacon* v. *Gray,* 23 Miss. 140; 2 Story Eg. Jur., section 1327.

III.   The third question involved is:   When did the time limit of ten years begin to run, under the timber deed?   We will consider first the question of when the ten years time began to run on cutting timber.   The deed under which the Ingram-Day Lumber Company claims the timber on the land involved in this suit was dated on October 20, 1906.   This was a sale of lying timber as well as standing timber.   ·*Clark* v. *Ingram-Day Lumber Co.,* 90 Miss. 487, clearly settles this case.

The testimony of all the witnesses is that the blown down timber, the dead timber, and the trees with broken tops were cut and removed about April, 1907.   It is shown by the evidence that about the same amount of timber was cut from each forty by the witnesses.   We also refer the court to the following cases on this point: *Perkins et al.* v. *Peterson* (Ga.), 35 S. E. 319-21; *Mattox* v. *Baxter et al.* (Ga.), 32 S. E. 94; *Gray Lumber Co.* v. *Harris et al.* (Ga.), 68 S. E. 749; *Call et al* v. *Jenner Lumber Co.,* 165 Pac. 23.   In the light of these cases, the time limit began to run April, 1907.

IV.   The fourth question involved is *the validity of the tax deed.*   It is insisted that the tax deed was void for the reason that it was not filed with the chancery clerk on the day of the sale.   We submit that the evidence is sufficient to sustain the validity of the filing of the deeds and of the lists of land sold, since the evidence is uncontradicted that the tax collector filed the list of land sold to individuals and the deed with the chancery clerk as soon as it could be done after the sale,

taking into consideration the number of sales made and the time required to do the work.

There is no evidence to show that there was a failure on the part of the assessor to give notice as required by law and that the notice is presumed to have been given; however, there is no law requiring notice of the filing of the assessment rolls at the time fixed by law. As to the further proposition which alleges that the board of supervisors required that the land be sold on the first Monday of July, 1921, instead of the first Monday of July, 1922, the record shows that it was ordered to be sold on the first Monday of July, 1922.

The clerk in entering the order on the minutes inadvertently wrote 1921 instead of 1922 and the board of supervisors at a subsequent meeting ordered the minutes corrected. The evidence shows that the order really required the sale to be made on the first Monday in July, 1922, and that the sheriff and tax collector proceeded in all respects to advertise and sell the lands on Monday, July 3, 1922, as required by the order.

The clerk having made a clerical error in entering the order on the minutes of the board of supervisors, the board had a perfect right to correct its own minutes in order to make the minutes speak the truth. *Stokes* v. *Shannon,* 55 Miss. 583.

It is further objected that the judgment *nunc pro tunc* was void for want of notice to the opposite party. It is difficult to see how the defendant in error can complain of this, since it consisted only in the entry of a judgment in his favor, which the clerk had omitted to enter and which the plaintiff in error merely desired to have entered in order that he might appeal from it.

While it is generally true that such judgment cannot be entered without notice, a different rule prevails where the record itself affords a conclusive date for sustaining the motion without resort to extraneous evidence—in

this case the bill of exceptions, which had been signed, sealed, and made a part of the record at the preceding term, showing the action of the court in overruling the motion. Freeman on Judg., section 64; *Fatan* v. *Carrel,* 1 Minor 170; *Allen* v. *Bradford,* 3 Ala. 281; *Glass* v. *Glass,* 24 Ala. 468; 15 R. C. L., page 625; *Jacks* v. *Adamson,* 60 A. S. R. 751; *Harris* v. *State of Nebraska,* 97 A. S. R. 635; *Stern* v. *Montana,* 108 A. S. R. 433; *Liddell* v. *Bodenheimer,* 115 A. S. R. 42.

*Ford, White, Graham & Gautier,* for appellee, Ingram-Day Lumber Company.

We call the court's attention to the fact that C. E. Cuevas is no heir to Roman Cuevas. He brought these suits after having obtained a lot of assignments from minors of their alleged interest. In cases where the minors themselves do not make the assignment, it is made by *next friend,* not acknowledged or recorded, and the court would have been well justified in dismissing the bills for this reason alone. Furthermore, as to some of the minors joined by Cuevas with him as complainants, he first used the father of such minors as next friend. The father repudiated this action, not knowing his name was being used. This is a suit which cannot commend itself to a court.

*The time of expiration of timber deed.* The deed was to remain in force until the appellee, or its assigns, "commence to cut and lumber the same, and for ten years thereafter." It would be hard to imagine the framing of a deed which more nearly conveyed everything on the land and which denoted a fuller intention of granting the buyer ten full years after beginning of cutting and removal operations, as generally understood.

Grantor knew that storm timber did not have to be cut. If the removal of storm timber had been in mind the word "removal" would have been used. The deed shows on its face that there was lying timber on the

land; it is conveyed by the deed itself. It is undisputed that nothing but storm timber was removed in 1907 and that nothing was cut; so we find, as the chancellor found, that the terms of the timber deed have not been violated. *Keeton* v. *Andsley,* 19 Mo. 362; 61 Am. Dec. 560. See 17 C. J. 688-9.

The deed also provides that the time begins to run from cutting and lumbering. Both have to be present. Certainly, taking a few storm trees would not constitute lumbering within the meaning given the term by unbiased persons. Counsel for appellant cite *Clark* v. *Ingram-Day Lbr. Co.,* 90 Miss. 487. That case simply held that the time to enter having expired, grantee could not go on the land to remove what had already been cut.

*The 1922 tax sale.* This sale was made on July 3, 1922. Under chapter 137, Laws of 1922, the sale must be made on the first Monday of May or within three days thereafter. *Howie* v. *Alford,* 100 Miss. 489.

Another reason for this sale being void is that the special sale ordered by the board of supervisors to be had in July, 1921. It was made in July, 1922. On August 4, 1925, the board of supervisors, necessarily at another term of the board attempted to change its minutes by which it fixed 1921 so that it would read 1922. No time, except a past date, being fixed for the special sale, it could not be a good sale.

Clerical error it no doubt was; but, if so, what day would the court say bidders should have appeared to bid, being advised of a date in 1921? It is too well settled for controversy that the board could not at a subsequent term change an order entered at a former term and at the same time give it any effect. *Board of Supervisors* v. *Parks,* 132 Miss. 752.

But counsel while conceding the date 1921, in the time fixed, would invalidate the sale, say the minutes cannot be attacked collaterally. The minutes themselves show the date stood as 1921 until the year 1925, when it was then changed. We are not attacking the minutes; we are

relying on them. *The Parks case, supra,* is absolutely controlling.

A tax sale is a proceeding *in invitum* as to the taxpayer and the law must be complied with. Judge ETHRIDGE in *Gulf Coast Stevedoring Co.* v. *Gibbs,* 124 Miss. 188, has settled this proposition even as to courts.

*Right to redeem.* The chancery court is not the place to redeem land from tax sales. We know of no law, authority, or reason which would allow a party wishing to redeem land from tax sale to file a bill against everybody in the community and then in a case seeking damages incidentally ask for redemption.

Counsel rely on section 4373, Code of 1906. This section refers solely to sales to the state of Mississippi, and then only by payment of the tax, etc., as *provided by statute.*

Counsel refer to section 2790, Code of 1906. This relates to the method of establishing an interest in land. As we see it, there is no controversy as to the minors' interest, but there is solely involved the question of redemption of that interest.

It is asked that the land be partited and sold and out of the proceeds that the proportion of the minors necessary thereto be applied to the redemption; but the land cannot be partited where different persons own the land and timber. *Forest Products Co.* v. *Buckley,* 107 Miss. 897; *Shepard* v. *Mt. Vernon Lbr. Co.,* 68 So. (Ala.) 880, 15 A. L. R. 23.

No one would contend that this property could be partited in kind and it has been held that sale for partition is never ordered where the parties are not entitled to petition in kind. *Pankey* v. *Howard,* 47 Miss. 83. The minors having no interest in this timber, the property could not be partited in kind even where it not for the decision in the *Buckley case, supra.*

The decree of the lower court should be affirmed.

Argued orally by *T. M. Evans,* for appellants.

ANDERSON, J., delivered the opinion of the court.

There are two of these cases. By consent of the parties they were consolidated and tried together. They were bills brought by appellants in the chancery court of Harrison county. The bills contained several different features. Their main purpose was to establish the right and title in favor of some of the appellants, to the timber on two forty-acre tracts of land in Harrison county, and cancel the claim to such timber by appellee Ingram-Day Lumber Company, and recover damages from Ingram-Day Lumber Company for the timber cut and removed by it from the two forty-acre tracts. The bills sought also, on behalf of certain of the appellants who were minors, to redeem their interest in the two tracts of land from tax sales theretofore made. Another feature of one of the bills was to establish a tax title in favor of one of the appellants, to an interest claimed by him in one of the forty-acre tracts. There was a trial on the bills, answers thereto, and proofs, and a decree in favor of appellees in both cases, dismissing appellants' bills. From that decree appellants prosecute this appeal.

There are two questions for decision common to both cases. There is another question arising alone out of one of the cases. In disposing of the questions we shall undertake in connection therewith to state the controlling facts out of which each question arises.

On October 20, 1906, Roman Cuevas and his wife, Anet, conveyed to appellee Ingram-Day Lumber Company the timber on the two forty-acre tracts of land involved. The deed of conveyance contained the following provision:

"It is especially covenanted and agreed that as to each forty (40) acre tract herein described and conveyed this deed shall continue and remain in force until the said Ingram-Day Lumber Company, or their successors and assigns, commence to cut and lumber the same, and for ten (10) years thereafter and then to become void and of no effect, but the rights of way of said Ingram-Day Lum-

ber Company, or their successors and assigns for railways, tramroads or dirt roads, whether main spur tracks or roads, shall remain in full force."

The question first to be considered turns upon the proper construction of this clause in the deed:

"This deed shall continue and remain in force until said Ingram-Day Lumber Company, or their successors and assigns, commerce to *cut and lumber the same,* and for ten years thereafter, and then to become void and of no effect." (Italics ours.)

A few months before this deed was made there had been an unusually destructive storm in South Mississippi, which had blown down a very large number of pine trees in that section. This was known, of course, to the parties to this deed, as it was to the people generally of that section of the state. Appellee Ingram-Day Lumber Company, beginning soon after the execution of the deed, and continuing not later than 1907, salvaged the down timber on the two forty-acre tracts of land. They cut and lumbered none of the standing timber on the land until 1916. From the time they began to cut and lumber the standing timber until the filing of the bills in these cases covered a period less than ten years. Therefore, if the ten-year time limit set out in the deed only began to run when appellee Ingram-Day Lumber Company began to cut and lumber the standing timber, their right to cut and lumber such timber at the time of the bringing of these suits had not expired. And if their right had not expired appellants had no right to the standing timber, and were not entitled to recover damages for that which had been cut and lumbered since 1916. By the terms of the deed not only the standing timber was conveyed, but the down timber as well, that clause of the deed being in this language: "All of the timber now or hereafter growing, standing, lying, or being, on the following described land." The evidence is varying as to how much down timber was on these two tracts of land. It ranged from something like twenty trees to one hundred trees. It

was necessary to remove the down timber to prevent its being destroyed by worms. Appellee Ingram-Day Lum-. ber Company had no sawmill at that time in the immediate section where this land is situated. In order to salvage the down timber it was therefore necessary that it be hauled a long distance to a sawmill. This was done. Only the down timber was removed and lumbered at that time. None of the standing timber was cut and lumbered, as stated, until 1916. The custom of the sawmill companies in South Mississippi was, when they began to cut and lumber standing timber on a piece of land, to take all the merchantable timber therefrom before they stopped. The phrase "cut and lumber" must be construed in the light of such custom as well as the surrounding facts existing at the time of the execution of the deed. Down timber does not have to be cut in the sense that standing timber does. It is true that to lumber it, it is necessary to cut it up into the proper lengths. On the other hand, standing timber must be cut down and then cut into lengths in order to be lumbered. We are of opinion that, taking the language of the phrase itself, "cut and lumber" it meant the cutting and lumbering of the standing timber, and not the down timber; and if there be any ambiguity in its language we think it is cleared up by the surrounding facts and circumstances existing at the time of the execution of the deed, which show that that was its meaning. We think the deed meant that the ten-year time limit should not begin to run until the grantee in the deed began to cut and lumber the standing timber; that in the meantime the grantee was given the right to remove and lumber the down timber without setting the ten-year time limit in motion. It follows from these views that appellants must fail in so far as they seek to recover damages of the appellee Ingram-Day Lumber Company for cutting and removing the standing timber from the land.

Both of the forty-acre tracts were sold for their taxes after 1906, and purchased by one Lowery. The two-year

period allowed by statute for their redemption from this tax sale had expired some years before the bills in these cases were filed. Lowery by deed conveyed his title acquired by the tax sale to appellee Ingram-Day Lumber Company. Some time after that tax sale and before the bringing of these suits, one of the forty-acre tracts was sold again for is taxes, and purchased by appellant C. E. Cuevas. The two-year period allowed by statute for redemption from this tax sale had also expired when the bills were filed in these causes. The tax sale of this forty-acre tract was for its taxes of 1921. The sale by the tax collector not having been made on the first Monday of May, or within three days thereafter, as provided by chapter 137, Laws of 1922, the board of supervisors, as it was authorized by statute to do, passed an order undertaking to fix a day in July, 1922, for the sale of the delinquent lands not sold at the regular time fixed by statute. That order was passed at the June, 1922, meeting. Instead of ordering the tax collector to sell the lands delinquent for their taxes, on the first Monday in July, 1922, as the board doubtless intended to do, the order directed the sale to be made "on the first Monday in July, 1921," which, of course, was an impossible date. At the meeting of the board of supervisors in 1925, the board undertook to correct that order by passing another order reciting that they had intended, in the former order, to fix the first Monday of July, 1922, for the sale, instead of the first Monday in July, 1921, as the order read. In other words, after the sales had been made the board of supervisors undertook to correct the error in their order as to the date of sale. The chancellor held the sale of the forty-acre tract involved void, and therefore that appellant C. E. Cuevas got no title by virtue of such sale.

Appellants contend that the board of supervisors had the right to correct the former order of sale at a subsequent meeting of the board so as to make the order conform to the order they intended to enter. To sustain that position they rely on cases decided by this court, and

other courts, holding that a court has the inherent power, at a subsequent term, to enter the judgment which it had rendered at a former term, but, through clerical error, had not been entered. We do not think those cases have any application to the character of order here involved—an order fixing a day for the sale of lands delinquent for their taxes. Tax sales are proceedings *in invitum.* The statutes authorizing such sales must be strictly construed as to the time and place of sale. The time and place of sale are fundamental. Both must be fixed in order to have a valid sale. The board of supervisors alone had the authority to fix the time of sale in the order made on their minutes, which they later, at a subsequent meeting, made an effort to correct. The order fixed an impossible day for the sale. We think that was equivalent to fixing no day at all. In this state boards of supervisors are very largely legislative bodies. It is true they are also *quasi*-judicial bodies, for they must exercise discretion and judgment. But they are not courts in the sense that the circuit and chancery courts are courts. Their jurisdiction and authority are fixed by statute. They have no inherent powers. They have no authority at a subsequent term to correct their orders and judgments entered at former terms. *Lafayette County* v. *Parks,* 132 Miss. 752, 96 So. 466. The order of the board in this case, undertaking to correct the former order, was simply no order at all, because it failed to fix one of the fundamentals of a valid tax sale, namely, the day of sale. We think therefore that appellant C. E. Cuevas got no title by virtue of that tax sale.

Those of the appellants who are under disability of minority seek to redeem their interests in the lands involved from the Lowery tax sale (appellee Ingram-Day Lumber Company claims title through that sale by purchase from Lowery), and to sell the land for partition among those entitled thereto according to their interests, in order to raise sufficient funds out of their interests to make redemption. From the record it appears undis-

puted that the appellants under disability of minority have no other property than their interests in these lands with which to raise funds to redeem the same.   Under the statute the minor appellants owning interests in these lands have two years within which to redeem after reaching their majority.   After the expiration of the two-year period for redemption, which applies to all except those under disability, tax deeds are delivered by the chancery clerks to the purchasers.   If the statute was complied with, Lowery, the purchaser of these lands, received his deed from the chancery clerk, and doubtless placed it on record.   If the appellants whose time for redemption has not expired on account of their disability should offer to redeem, or redeem now, there still will be outstanding the Lowery tax deed, and his deed to appellee Ingram-Day Lumber Company.   They would be without remedy except in a court of equity to have these deeds canceled so far as their interests in the land are concerned.   We think under these conditions such of the appellants as are now entitled to redeem from that tax sale are without an adequate remedy, except in a court of equity.   In the case of *Swalm* v. *Sauls,* 141 Miss. 515, 106 So. 775, we held, under the peculiar facts of that case, that a court of equity has jurisdiction of a bill to redeem. In 37 Cyc., p. 1419 (chapter on Taxation), it is stated that if the owner of land is prevented from redeeming on account of his minority, or other legal disability, he may resort to a court of equity to redeem.   We think *Johns* v. *Smith,* 56 Miss. 727, is strongly persuasive in favor of this view.   That case also sustains the contention of appellants under disability of minority that under the facts of this case they are entitled to have their interests in these lands sold to raise the necessary funds with which to redeem them from the tax sale in question.

The appellants under disability of minority who have the right of redemption from the Lowery tax sale of their respective interests contend that under the facts of this case they are entitled to a partition of the lands, or a sale

thereof, for a division of the proceeds among the tenants in common. After they have redeemed they will own undivided interests in the land. The remaining undivided interest will be owned by appellee Ingram-Day Lumber Company. The latter, under its timber deed, owns the timber on the land, with the right of removal within the time limit fixed by the deed. Therefore, in addition to the ownership of the soil by persons who are cotenants, one of the cotenants, appellee Ingram-Day Lumber Company, separately owns the standing timber on the land. The other cotenants have no interest therein, except what may be left after the right of appellee Ingram-Day Lumber Company expires. The partition of lands, and the sale of lands for a division of the proceeds thereof among joint tenants, tenants in common, or coparceners, is not dependent upon the common law or the general principles of equity, but are governed by our statutes in reference to partition of lands. Under section 3521, Code of 1906, section 2833, Hemingway's Code, providing for the partition of lands held by joint tenants, tenants in common, or coparceners, an owner of land who has sold to another the standing timber thereon is not entitled to partition, since the parties do not hold as provided by the statute. *Forest Product Co.* v. *Buckley,* 107 Miss. 897, 66 So. 279; *Pankey* v. *Howard,* 47 Miss. 83. In the latter case it was further held that there could be no sale of lands for division of the proceeds among cotenants unless the cotenants are entitled to partition of the lands. In view of the character of the interests of the parties owning the land involved and the timber thereon, certainly there could be no partition in kind.

It follows from these views that the appellants who are under disability of minority owning an interest in the land involved, have the right to have such interests sold, if necessary, in order to raise funds with which to make redemption of the land from the Lowery tax sale. In all other respects the decree of the chancellor should be affirmed. The case therefore will go back for the pur-

pose alone of enabling those of appellants entitled thereto, to have whatever interest they may own in the land involved sold for the purpose of raising funds with which to redeem the same from the tax sale.

*Affirmed in part, and reversed in part and remanded.*